## UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re: | CHAPTER 13 |
| KENNETH GREGORY COOK,<br>                              Debtor. | CASE NO. 18-53572 – PMB |
| | JUDGE PAUL M. BAISIER |
| CARRINGTON MORTGAGE SERVICES,<br>LLC, ITS SUCCESSORS OR ASSIGNS,<br><br>                              Movant,<br><br>V.<br><br>KENNETH GREGORY COOK, Debtor<br>MELISSA J. DAVEY, Chapter 13 Trustee,<br><br>                              Respondents. | CONTESTED MATTER* |

### NOTICE OF HEARING

*PLEASE TAKE NOTICE* that *CARRINGTON MORTGAGE SERVICES, LLC* has filed a *Motion for Relief from Stay (the "Motion")*, and related papers with the Court seeking an order *granting relief from the automatic stay.*

**PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the** *Motion,* **at** *9:00 A. M.,* **on** *September 9, 2021,* **in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.**

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.

You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk is Clerk, U. S. Bankruptcy Court, 75 Ted Turner Drive, Suite 1340, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

This matter will appear on a Court calendar at the date and time indicated on this notice. At the call of the calendar (the "calendar call") Court staff will ask for announcements for all matters. Parties may attend the calendar call in person or on the telephone (Dial the toll-free number: 888557-8511 and then enter the access code: 3347422). Matters that need to be heard by the Court may be heard by telephone, by video conference, or in person.

Before the day of your hearing, it is important that you review the "Open Calendar Procedures" tab on Judge Baisier's web page, which can be found at https://www.ganb.uscourts.gov/content/honorable-paul-m-baisier or under the "Information About Bankruptcy Court Hearings" link at the top of the web page for this Court, www.ganb.uscourts.gov. These web pages will provide more information on how the calendar call will be conducted for this matter, when the matter will be heard if a hearing before the Court is necessary, and whether any necessary hearing will be conducted by telephone, by video conference via Judge Baisier's Virtual Hearing Room, or in person.

***If a hearing on the Motion for Relief from the Automatic Stay (the "__Motion__") cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.***

Dated: 08/09/2021

**LOGS LEGAL GROUP LLP**

*/s/Kathlyn Flora Ibrahim Fouad Khashan*

Howell A. Hall 318750
Kathlyn Flora Ibrahim Fouad Khashan 177083
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Telephone: (770) 220-2535
Fax: (770) 220-2665

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>KENNETH GREGORY COOK,<br>                      Debtor. | CHAPTER 13<br><br>CASE NO. 18-53572 - PMB |
| CARRINGTON MORTGAGE SERVICES, LLC, ITS SUCCESSORS OR ASSIGNS,<br><br>                    Movant,<br><br>V.<br><br>KENNETH GREGORY COOK, Debtor<br>MELISSA J. DAVEY, Chapter 13 Trustee,<br><br>                  Respondents. | CONTESTED MATTER* |

**MOTION FOR RELIEF FROM STAY**

COMES NOW Carrington Mortgage Services, LLC, its successors or assigns, ("Movant"), by and through its undersigned counsel, and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362(d) FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Kenneth Gregory Cook (hereinafter "Debtor") filed this proceeding under Chapter 13 of the Bankruptcy Code on March 2, 2018 and remains in possession of the subject property under a plan of arrangement to be confirmed by this Court.

3.

Movant is the holder or servicer of a loan secured by certain real property now or formerly known as 5771 Southland Walk, Stone Mountain, GA 30087, in DeKalb County, GA.  Copies of the Security Deed and Assignments are attached hereto as Exhibit "A".  A copy of the Note is attached hereto as Exhibit "B".

4.

Carrington Mortgage Services, LLC services the loan on the property referenced in this Motion for Relief.  In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant is the original mortgagee or beneficiary or the assigned of the Mortgage or Deed of Trust.

5.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due. As of August 2, 2021, the estimated post-petition deficiency is $4,036.23 and consists of the May 1, 2021 payment at $1,398.32 each and June 1, 2021 through August 1, 2021 payments at $1,311.19 each and less the suspense balance in the amount of $1,295.66.  An additional payment will come due September 1, 2021 and on the first day of each month thereafter until the loan is paid in full.

6.

As of August 2, 2021, current unpaid principal balance due under the loan document is $160,338.12. According to the Debtor(s) Schedule A/B, the property is currently valued at $173,953.00.

7.

Based upon the foregoing facts, there is a lack of adequate protection in the subject property. Movant shows that good cause exists to grant relief from the automatic stay of 11 U.S.C. § 362.

8.

Movant has incurred attorney's fees and cost, in the amount of $1,038.00, as a result of filing this motion. These fees and cost are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Movant requests that upon entry of an Order granting relief from the automatic stay of Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movants' Proof of Claim.

WHEREFORE, Movant respectfully requests:

a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, effectuating a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

b)  That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

c)  That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

d)  That Movant be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor;

e)  Movant prays, that in the event of an Order granting relief from the automatic stay of Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim.

f)  For such other and further relief the Court deems just and proper.

Dated:    8/6/21

                                        **LOGS LEGAL GROUP LLP**

                                        */s/Kathlyn Flora Ibrahim Fouad Khashan*
                                        Howell A. Hall 318750
                                        Kathlyn Flora Ibrahim Fouad Khashan
                                        177083
                                        211 Perimeter Center Parkway, N.E.
                                        Suite 300
                                        Atlanta, GA 30346
                                        Telephone: (770) 220-2535
                                        Fax: (770) 220-2665

### **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the within Notice of Assignment of Hearing was served, together with a copy of the Motion for Relief from Stay filed in this bankruptcy matter via electronic mail notice to parties, and their representatives, who are ECF Filers and Consent Users, or by depositing a copy of same in the United States Mail, postage prepaid, all other interested parties at the indicated addresses as follows:

Via CM/ECF Electronic Notice

Howard P. Slomka
Slipakoff & Slomka, PC
HS@ATL.law

Melissa J. Davey
mail@13trusteeatlanta.com

Via First Class Mail, Postage Prepaid

Debtor
Kenneth Gregory Cook
5771 Southland Walk
Stone Mountain, GA 30087

Dated:  08/09/2021

**LOGS LEGAL GROUP LLP**

*/s/Kathlyn Flora Ibrahim Fouad Khashan*
_____
Howell A. Hall 318750
Kathlyn Flora Ibrahim Fouad Khashan 177083
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Telephone: (770) 220-2535
Fax: (770) 220-2665



EXHIBIT "A"

OOK **20420** Pg **598**
Filed and Recorded:
11/5/2007 5:00:01 PM

**Linda Carter**
Clerk of Superior Court
DeKalb County, Georgia

After Recording Return To:

AFTER RECORDING RETURN TO:
MORRIS / HARDWICK / SCHNEIDER
100 CRESCENT CENTER PARKWAY
# 700
TUCKER, GA 30084

[Space Above This Line For Recording Data]

## SECURITY DEED

FHA CASE NO.

THIS SECURITY DEED ("Security Instrument") is given on **October 24, 2007**
The grantor is **Kenneth Cook**

("Borrower").This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and
Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **PINE STATE MORTGAGE
CORPORATION, A Georgia Corporation**

("Lender") is organized and existing
under the laws of **Georgia**                                                                      , and
has an address of **6065 Roswell Road, Suite 300, Atlanta, GA 30328**

Borrower owes Lender the principal sum of **One Hundred Sixty Four Thousand Eight Hundred Eighty Six and
no/100**                                                    Dollars (U.S. $**164,886.00**                     ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **November 01, 2037**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS
(solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of
sale, the following described property located in **Dekalb**                                                    County, Georgia:
**SEE ATTACHED EXHIBIT 'A'**

**GEORGIA FHA SECURITY DEED**

*(Page 1 of 7 pages)*

6/96
GreatDocs™
To Order Call: 1-800-968-5775

38

which has the address of

**5771 Southland Walk**
[Street]

**Stone Mountain**          Georgia          **30087**          ("Property Address");
[City]                                       [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.    **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

**GEORGIA FHA SECURITY DEED**

*(Page 2 of 7 pages)*

GreatDocs™
To Order Call: 1-800-968-5775

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4.   Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

**GEORGIA FHA SECURITY DEED**

███████████████

*(Page 3 of 7 pages)*

GreatDocs™
To Order Call: 1-800-968-5775



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 Days** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 Days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**GEORGIA FHA SECURITY DEED**

*(Page 4 of 7 pages)*

GreatDocs™
To Order Call: 1-800-968-5775



**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

GEORGIA FHA SECURITY DEED

*(Page 5 of 7 pages)*

GreatDocs ™
To Order Call: 1-800-968-5775



**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] **GA Waiver of Borrower's Rights** | |

GEORGIA FHA SECURITY DEED

*(Page 6 of 7 pages)*

GreatDocs ™
To Order Call: 1-800-968-5775

BORROWER ACCEPTS AND AGREES to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Unofficial Witness                                **Kenneth Cook**                          -Borrower

_____          _____ (Seal)
                                                                                           -Borrower

Notary Public,   _____   County

My commission expires:                            _____ (Seal)
                                                                                           -Borrower


                                                  _____ (Seal)
                                                                                           -Borrower


                                                  _____ (Seal)
                                                                                           -Borrower


                                                  _____ (Seal)
                                                                                           -Borrower


**GEORGIA FHA SECURITY DEED**

*(Page 7 of 7 pages)*                             GreatDocs™
                                                  To Order Call: 1-800-968-5775

# FHA PLANNED UNIT DEVELOPMENT RIDER

| FHA CASE NO. |
|---|
| ███████████ |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **24th** day of **October 2007** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Pine State Mortgage Corporation, a Georgia Corporation** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**5771 Southland Walk**
**Stone Mountain, Georgia 30087**

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**Southland**

[Name of Planned Unit Development Project]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

*KGC*

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this FHA Planned Unit Development Rider.

_Kenneth Cook_ _____ (Seal)                      _____ (Seal)
Kenneth Cook                        -Borrower                                              -Borrower

_____ (Seal)                      _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)                      _____ (Seal)
                        -Borrower                                              -Borrower

                                                                 [Sign Original Only]

2/91

(Page 2 of 2 pages)                 GREATLAND ■
                                    To Order Call: 1-800-530-9393    Fax 616-791-1131

# EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 65 of the 16th District, DeKalb County, Georgia, being Lot 26 of Southland Subdivision, Unit II, as per plat thereof recorded in Plat Book 84, page 140, DeKalb County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

5771 Southland Walk, Stone Mountain, GA, 30087

Legal Description

Exhibit A (Legal Description-Letter).rdw

10/24/07 @ 11:47 AM

GEORGIA -
GRANTOR: **Kenneth Cook**:

LENDER: **PINE STATE MORTGAGE CORPORATION, A Georgia Corporation**:

DATE OF SECURITY DEED: 10/24/2007

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF;
(3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____   _Kenneth Cook_____ (Seal)
                                     Kenneth Cook                 Grantor

_____   _____ (Seal)
                                                                 Grantor

_____   _____ (Seal)
                                                                 Grantor

                                     _____ (Seal)
                                                                 Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer, personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the _____

_____                    _____ Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_Kenneth Cook_____   _10/24/07_____     _____
Kenneth Cook                    Date                  Date

_____   _____     _____
                                    Date                  Date

GA Waiver of Borrowers Rights PSMC            Page 1 of 1
7/1/2003

**PREPARED BY AND
RETURN TO:**
Attn: Kimberly Morris
SHAPIRO PENDERGAST & HASTY, LLP
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, Georgia 30346
(770) 220-2535



OK **26382** Pg **145**

Filed and Recorded:
**7/19/2017 9:13:11 AM**
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

PLEASE CROSS REFERENCE TO Deed Book
**20420**, Page **598**, and Deed Book **22528**, Page
**205**

STATE OF ~~California~~
COUNTY OF ~~Orange~~

Cook, Kenneth
FILE #██████████
MERS MIN ████████████████
Phone# 1-888-679-6377
MERS Address: P.O. Box 2026, Flint, MI
48501-2026

## C O R R E C T I V E   A S S I G N M E N T

    FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc.**, assignor, hereby transfers, assigns, sells, conveys and delivers to **BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP**, hereinafter referred to as Assignee (whose address is **400 National Way, Simi Valley, CA 93065**) a certain Deed to Secure Debt dated **October 24, 2007**, between **Kenneth Cook** (grantor) and **Mortgage Electronic Registration Systems, Inc. as nominee for Pine State Mortgage Corporation, its successors and assigns** (grantee), said Deed being recorded in Deed Book **20420**, Page **598, and at Deed Book 23725 Page 791 and, and at Deed Book 24389 Page 742, DEKALB** County, Georgia Records, thereby which the said Deed was given to secure; and does hereby deed, grant and convey to the said Assignee all of the property in the said Deed described, together with all the rights, powers and privileges therein contained in as full, ample and complete manner as the undersigned is authorized to exercise the same.

    This instrument is executed for the purpose of correcting a prior assignment from **Mortgage Electronic Registration Systems, Inc. to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP**, dated **June 22, 2011**, which was improperly executed and recorded in Deed Book **22528**, Page **205**, in **DEKALB** County, Georgia records.

DEED BOOK    26382 Pg 146

This assignment is made without warranty or recourse upon the Assignor, its successors or assigns.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized corporate officers and on the ___7th___ day of ___June___, 2017.

**Mortgage Electronic Registration Systems, Inc.**
As Nominee for Pine Mortgage State Mortgage
Corporation, Its Successors and Assigns

By: _____

Print Name:_____
Elizabeth A. Ostermann
Assistant Secretary of MERS

Title:_____

Signed, sealed and delivered in the presence of:

_____
Witness      VERONICA RIBLES

_____
Witness    Gloria Bilotti

DEED BOOK 26382 Pg 147

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of CALIFORNIA**                    )
**County of ORANGE**                       )

On _June 7_ , 20 _17_ before me, _Carol A. Butler Notary Public_ , personally appeared

_Elizabeth A. Ostermann_    who signed the above-referenced Instrument in my presence

and who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

Instrument, and acknowledged to me that he/she/they executed the same in his/ her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cleet_    (Seal)
Name: _Carol A. Butler_

CAROL A. BUTLER
Commission # ███████
Notary Public - California
Orange County
My Comm. Expires Oct 3, 2018

**EXHIBIT**

DEED BOOK 26382 Pg 148

# CORPORATE RESOLUTION OF

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

NOW, THEREFORE, BE IT RESOLVED, that the individuals (the "Signing Officers") set forth on the attached list of candidates, as amended from time to time by Mortgage Electronic Registration Systems, Inc. ("MERS") at the request of **Carrington Mortgage Services LLC, Org ID** ▮▮▮▮▮ (the "Member"), are officers of the Member, which is a member of the MERS® System, and that each such individual be, and he or she, as the case may be, hereby is, appointed as an assistant secretary, assistant vice president, and vice president of MERS; and be it further

RESOLVED, that this MERS Corporate Resolution supersedes and replaces any and all previous MERS Corporate Resolutions that appointed Signing Officers for the Member; and be it further

RESOLVED, that all Signing Officers shall be bound to abide by and follow the MERS® System Rules of Membership (the "Rules"); and be it further

RESOLVED, that the authority granted to such Signing Officers as assistant secretary, assistant vice president, and vice president of MERS shall be specifically limited to undertaking only the actions set forth below on behalf of MERS, provided such actions are otherwise taken in accordance with the requirements of applicable laws, rules, and regulations, and further that any action taken by a Signing Officer that is not specifically enumerated below is beyond the scope of the authority granted to such Signing Officer and is ultra vires; and be it further

RESOLVED, that each of the Signing Officers be, and hereby is, authorized to perform only the following on behalf of and in the name of MERS:

(1)    take any and all actions and execute all documents necessary to release the lien of any mortgage loan registered on the MERS® System that is shown to be registered to the Member or its Affiliate Org ID, including but not limited to (a) satisfactions, (b) discharges, (c) partial releases, and (d) substitution of trustee on Deeds of Trust;

(2)    assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS® System, is shown to be registered to the Member or its Affiliate Org ID;

(3)    execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS® System that is shown to be registered to the Member or its Affiliate Org ID, so long as such execution does not violate the Rules, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, and (g) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4)    take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS® System that is shown to be registered to the Member or its Affiliate Org ID, so long as such execution does not violate the Rules, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and

applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

(5)  take any and all actions and execute all documents necessary to refinance, subordinate, amend or modify any mortgage loan registered on the MERS® System that is shown to be registered to the Member or its Affiliate Org ID;

(6)  endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS® System that is shown to be registered to the Member or its Affiliate Org ID;

(7)  take any such actions and execute such documents as may be necessary to fulfill the Member's (i) servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS® System as a result of a deactivation), including, but not limited to, (a) verifying litigation documents, and (b) responding to various forms of discovery requests, and (ii) indemnification obligations under the Rules; and

(8)  take such ministerial actions and, in such ministerial capacity, to execute and deliver all such instruments and documents as the officer(s) of MERS deem necessary or appropriate in order to effectuate fully the purpose of each and all of the foregoing powers.

I, **Timothy E Renner,** being the **Associate Secretary** of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by me pursuant to authority granted by the Board of Directors of MERS, and that it is effective as of **Wednesday, November 23, 2016**. This MERS Corporate Resolution is in full force and effect on this date and it does not conflict with the Certificate of Incorporation or By-Laws of MERS.

**Timothy E Renner, Associate Secretary**



DEED BOOK 26382 Pg 150
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Page 1 of 1

## Carrington Mortgage Services LLC

### Org ID ███████

**Master List effective as of Wednesday, November 23, 2016**

### Mortgage Electronic Registration Systems, Inc.
### Signing Officers

ANTHONY DEROSA

CHRIS LECHTANSKI

CHRIS S. MILLER

ELIZABETH OSTERMANN

JARED BOOR

KIRK GERLING

ROB PETRUSKA

SCOTT A. REED

TOM CROFT

YOLANDA TALBOT

**PREPARED BY AND
RETURN TO:**
Attn: Kimberly Morris
SHAPIRO PENDERGAST & HASTY, LLP
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, Georgia 30346
(770) 220-2535



OK **26284** Pg **97**

Filed and Recorded:
**5/31/2017 1:50:45 PM**
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

PLEASE CROSS REFERENCE TO Deed Book
**20420**, Page **598**, and Deed Book **25857**, Page
**740**

STATE OF _California_
COUNTY OF _Orange_

Cook, Kenneth
FILE #: ▮▮▮▮▮

## C O R R E C T I V E   A S S I G N M E N T

FOR VALUE RECEIVED, **Bank of America, N.A. sbmt BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP**, assignor, hereby transfers, assigns, sells, conveys and delivers to **Carrington Mortgage Services, LLC**, hereinafter referred to as Assignee (whose address is **1600 South Douglass Road, Suite 200-A, Anaheim, CA 92806**) a certain Deed to Secure Debt dated **October 24, 2007**, between **Kenneth Cook** (grantor) and **Mortgage Electronic Registration Systems, Inc. as nominee for Pine State Mortgage Corporation, its successors and assigns** (grantee), said Deed being recorded in Deed Book **20420**, Page **598, and at Deed Book 23725 Page 791 and, and at Deed Book 24389 Page 742, DEKALB** County, Georgia Records, thereby which the said Deed was given to secure; and does hereby deed, grant and convey to the said Assignee all of the property in the said Deed described, together with all the rights, powers and privileges therein contained in as full, ample and complete manner as the undersigned is authorized to exercise the same.

This instrument is executed for the purpose of correcting a prior assignment from **Bank of America, N.A. sbmt BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP** to **Carrington Mortgage Services, LLC**, dated **June 22, 2016**, which was improperly executed and recorded in Deed Book **25857**, Page **740**, in **DEKALB** County, Georgia records.

This assignment is made without warranty or recourse upon the Assignor, its successors or assigns.

DEED BOOK 26284 Pg 98

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized corporate officers and on the 3rd day of May, 2017.

**Carrington Mortgage Services, N.A. as Servicer and Attorney-in-Fact for Bank of America, N.A. sbmt BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP**

By: _____

Print Name: ___Elizabeth A. Ostermann___

Title: ___Vice President___

By: _____

Print Name: ___Chris Lechlanski, AVP of Default for Carrington Mortgage Services, LLC, Attorney in Fact___

Title: _____

Signed, sealed and delivered in the presence of:

Witness ___Anna Stehle___

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of CALIFORNIA**                                    )

**County of ORANGE**                                      )

On _May 3_, 20_17_ before me, _Carol A. Butler  Notary Public_, personally appeared

_Elizabeth A. Ostermann  +  Chris Lechtanski_ who signed the above-referenced Instrument in my presence

and who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

Instrument, and acknowledged to me that he/she/they executed the same in his/ her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _C. Butler_                                    (Seal)

Name: _Carol A. Butler_



CAROL A. BUTLER
Commission # ███████
Notary Public - California
Orange County
My Comm. Expires Oct 3, 2018

# EXHIBIT

**AGREEMENT REGARDING LIMITED POWER OF ATTORNEY GRANTED BY BANK OF AMERICA, N.A. TO CARRINGTON MORTGAGE SERVICES, LLC AS SUBSERVICER OF CERTAIN MORTGAGE LOANS**

WHEREAS, Bank of America, N.A., a national banking association ("Owner")[1] and Carrington Mortgage Services, LLC, a Delaware limited liability company ("Subservicer"), are parties to a certain Flow Subservicing Agreement dated as of February 15, 2013 (the "Servicing Agreement"), pursuant to which Subservicer has the duty to provide servicing, administration, and management and disposition services with respect to certain mortgage loans ("Mortgage Loans") owned by Owner and the property securing the Mortgage Loans (the "Servicing Arrangement");

WHEREAS, Subservicer's commitments and obligations under the Servicing Agreement include servicing and administering the Mortgage Loans, protecting and advancing Owner's interests in Mortgage Loans and the property securing those Mortgage Loans ("Interests"), and discharging Owner's obligations to the borrowers under the Mortgage Loans (collectively, the "Duties");

WHEREAS, in performing the Duties, Subservicer may reasonably determine that certain legal actions must under the law or ought under the circumstances (in order to avoid risks affecting Owner's Interests) be taken in the name of Owner ("Actions"), including without limitation the execution, indorsement, acknowledgement, sealing, delivering or filing of documents, instruments, instructions or other writings (collectively, "Documents");

WHEREAS, the delivery of Documents to Owner for execution and return presents material risks to Owner's Interests, including both economic and legal risks arising from delay and the potential loss of Documents;

WHEREAS, certain third parties, including without limitation insurers, courts, county clerks, registrars of deeds, or other public officers or private persons, may require demonstration or proof of Subservicer's authority or power to take Actions in the name of Owner as a condition to crediting or giving effect to such Actions;

**NOW, THEREFORE,** in consideration of the mutual promises set forth in the Servicing Agreement and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Owner hereby grants the limited power of attorney attached as Exhibit A hereto ("Limited Power of Attorney"), and Owner and Subservicer stipulate as follows:

1. This Agreement Regarding Limited Power Of Attorney Granted By Bank Of America, N.A. To Carrington Mortgage Services, LLC As Subservicer Of Certain Mortgage Loans (this "Agreement") supplements, forms a part of, and is subject to, the Servicing Agreement. All provisions contained in the Servicing Agreement govern this Agreement except as expressly modified below and shall supersede all or any prior written or oral agreement in relation to the Limited Power of Attorney.

2. The Limited Power of Attorney is given solely to demonstrate to third parties Subservicer's right to take Actions in the name of Owner. Subject only to the proviso contained herein, nothing herein or in the Limited Power of Attorney amends or modifies the Servicing Agreement or the respective rights, duties or obligations, or covenants, representations or warranties, of or given by

---

[1] **Bank of America, N.A, is successor by merger to BAC Home Loans Servicing LP formerly known as Countrywide Home Loans Servicing LP, Merrill Lynch USA and FleetBoston Financial Corporation. The attached Limited Power of Attorney is intended to cover Actions, as such term is defined therein, taken in the name of Bank of America, N.A, as successor by merger to any of BAC Home Loans Servicing LP, Countrywide Home Loans Servicing LP, Merrill Lynch USA or FleetBoston Financial Corporation.**

Owner or Subservicer in or under the Servicing Agreement, and nothing herein or therein shall constitute a waiver of any rights (including any indemnity) or remedies contained in or arising under the Servicing Agreement, statute or common law, law merchant or by reason of normal business practice—provided that, for purposes of those rights and remedies, any misuse by Subservicer of the Limited Power of Attorney shall constitute failure by Subservicer to perform the Duties in compliance with the terms of the Servicing Agreement and is otherwise an event of default under the Servicing Agreement.

3.  Subservicer hereby acknowledges that any Action taken shall be attributed to Subservicer for purposes of Owner's rights and remedies under the Servicing Agreement.

4.  Subservicer hereby acknowledges, and the undersigned officer hereby certifies, that the power granted under the Limited Power of Attorney is limited solely to performing those Actions and executing, indorsing, acknowledging, sealing, delivering or filing those Documents reasonably required or appropriate to fulfill the Duties, and the taking by Subservicer of any other actions in the name of Owner is not authorized under the Servicing Agreement or by virtue of the Limited Power of Attorney.

5.  Subservicer shall not record this Agreement, but shall be permitted to file an appropriately completed form of the Limited Power of Attorney.

6.  This Agreement is entered into under and shall be governed by the laws of the State of California without regard to conflicts of law principles of such state.

7.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed original, but all of which shall constitute one and the same instrument.

*[Signature Pages Follow]*

AGREEMENT REGARDING LIMITED POWER OF ATTORNEY GRANTED
BY BANK OF AMERICA, N.A. TO CARRINGTON MORTGAGE SERVICES, LLC AS
SUBSERVICER OF CERTAIN MORTGAGE LOANS

2

IN WITNESS WHEREOF, Bank of America, N.A. and Carrington Mortgage Services, LLC have caused this Agreement to be executed by their duly authorized officers as of April 12, 2013.

BANK OF AMERICA, N.A.

By: _____

Name: _____ Lee Wardlow _____

Title: _____ Senior Vice President _____

STATE OF TEXAS        :
                      : ss.
COLLIN COUNTY         :

On the 12th day of April in the year 2013, before me, the undersigned, personally appeared ___ Lee Wardlow ___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that the individual executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

LAURA D. FISCHER
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-02-13

Notary Public
My commission expires: 6/2/2013

CARRINGTON MORTGAGE SERVICES, LLC

By: _____

Name: _____ Tom Croft _____

Title: _____ SVP of Default _____

STATE OF _California_      :
                          : ss.
_Orange_ COUNTY           :

On the _3rd_ day of _May_ in the year 2013, before me, the undersigned, personally appeared ___ Tom Croft ___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that the individual executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
My commission expires: 08/21/13

ELIZABETH GONZALES
Commission ████
Notary Public - California
Los Angeles County
My Comm. Expires Aug 21, 2013

AGREEMENT REGARDING LIMITED POWER OF ATTORNEY GRANTED
BY BANK OF AMERICA, N.A. TO CARRINGTON MORTGAGE SERVICES, LLC AS
SUBSERVICER OF CERTAIN MORTGAGE LOANS

3

DEED BOOK 26284 Pg 103

## Exhibit A

LIMITED POWER OF ATTORNEY

*[attached hereto]*

AGREEMENT REGARDING LIMITED POWER OF ATTORNEY GRANTED
BY BANK OF AMERICA, N.A. TO CARRINGTON MORTGAGE SERVICES, LLC AS
SUBSERVICER OF CERTAIN MORTGAGE LOANS

4

# EXHIBIT

## LIMITED POWER OF ATTORNEY

**KNOW ALL PERSONS BY THESE PRESENTS:**

THAT, BANK OF AMERICA, N.A., a national banking association ("Owner"), by these presents does hereby make, constitute and appoint Carrington Mortgage Services, LLC, a Delaware limited liability company ("Subservicer"), BANA's true and lawful agent and attorney-in-fact, and hereby grants it authority and power to take, through its duly authorized officers and designated agents, the Actions (as such term is defined herein) in Owner's name, place and stead. This limited power of attorney ("Limited Power of Attorney") is given in connection with and pursuant to a certain Flow Subservicing Agreement dated as of February 15, 2013 (the "Agreement"), by and between Owner and Subservicer, pursuant to which Subservicer has the duty to provide servicing, administration, and management and disposition services with respect to certain mortgage loans ("Mortgage Loans") owned by Owner (the "Servicing Arrangement"). Each of the Mortgage Loans comprises a promissory note evidencing a right to payment and performance secured by a security interest or other lien on real property ("Property") evidenced by one or more mortgages, deeds of trust, deeds to secure debt or other forms of security instruments (each, a "Security Instrument"). The assignment of a Security Instrument, as used herein, shall also include the assignment of the beneficial interest under a deed of trust.

As used above, the term "Actions" shall mean and be limited to the following acts, in each case with respect to one or another of the Mortgage Loans or the Property and as mandated or permitted by federal, state or local laws or other legal requirements or restrictions—including without limitation federal and state debt collection laws—applicable to Owner or Subservicer in connection with mortgage loans serviced by Subservicer or on behalf of Owner as owner:

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is or hereafter shall become due and payable) belonging to or claimed by Owner in respect of the Mortgage Loans and Property, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee under a deed of trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale (or any other statement of notice that is now or hereafter becomes necessary or appropriate to protect or enforce Owner's interest in the Mortgage Loans and Property), filing proofs of claim, motions for relief from the automatic stay or other writings in a bankruptcy proceeding, taking deeds in lieu of foreclosure, negotiating and entering into "cash for keys" agreements, evicting and foreclosing on the Properties.

2. Subordinate the lien of a mortgage or deed of trust (i) for the purpose of refinancing Mortgage Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

3. Execute and/or file such documents and take such action as is proper and necessary to defend Owner in litigation and to resolve any litigation where Subservicer has an obligation to defend Owner.

4. Transact business of any kind regarding the Mortgage Loans, as Owner's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or

agreement relating thereto.

5.  Execute, complete, indorse or file bonds, notes, Security Instruments and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, reconveyances, assignments, loan modification agreements, loan assumption agreements, subordination agreements, property adjustment agreements, and other instruments pertaining to Security Instruments, bills of sale and execution of deeds and associated instruments, if any, conveying or encumbering the Property, in the interest of Owner.

6.  Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by Owner or a prior transferor, including, but not limited to note indorsements.

7.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

8.  Execute and deliver the following documentation with respect to the sale of REO Property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation: listing agreements; purchase and sale agreements; grant/warranty/quit claim deeds or other deeds causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

9.  Perform all steps necessary to realize on insurance proceeds, including but not limited to insurance proceeds relating to foreclosures, short sales, deeds in lieu of foreclosure, sale of REO Property, and the exercise of any rights of Owner under any insurance agreement.

10. Endorse on behalf of Owner all checks, drafts and/or other negotiable instruments made payable to Owner.

With respect to the Actions, Owner gives to said attorney-in-fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as Owner itself might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof.  Any Action taken pursuant to this Limited Power of Attorney shall be binding on Owner and Owner's successors and assigns.

Owner represents to those dealing with such attorney-in-fact that they may rely upon this Limited Power of Attorney until they receive actual notice of termination or revocation thereof or unless an instrument of revocation has been recorded.  Any and all third parties dealing with Subservicer as Owner's attorney-in-fact may rely completely, unconditionally and conclusively on the authority of Subservicer, and need not make any inquiry about whether Subservicer is acting pursuant to the Servicing Arrangement.  Any purchaser, title insurance company, public official or other third party may rely upon a written statement by Subservicer that any subject mortgage loan or real estate owned by Owner or by Subservicer for Owner as a result of the termination of the related Mortgage Loan, is subject to the authority and power conferred to the Subservicer pursuant to the Servicing Arrangement and this Limited Power of Attorney.

Nothing contained herein shall be construed to grant Subservicer the power to (i) initiate or defend any suit, litigation, or proceeding in the name of Owner or be construed to create a duty of Owner to initiate or defend any suit, litigation, or proceeding in the name of Subservicer, (ii) incur or agree to any liability

DEED BOOK 26284 Pg 106
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

or obligation in the name or on behalf of Owner, or (iii) execute any document or take any action on behalf of, or in the name, place, or stead of, Owner, except, in each case, as provided herein.

**IN WITNESS WHEREOF,** Bank of America, N.A. has executed this Limited Power of Attorney this 12th day of April, 2013.

BANK OF AMERICA, N. A.

By: _____
Name: _____ Lee Wardlow _____
Title: _____ Senior Vice President _____

Witness: _____
Name: _____ Noel Zeuner _____
Title: _____ Senior Vice President _____

Witness: _____
Name: _____ Meredith Spurrier _____
Title: _____ Vice President _____

STATE OF TEXAS        :
                      : ss.
COLLIN COUNTY         :

On the 12th day of April in the year 2013, before me, the undersigned, personally appeared _____ Lee Wardlow _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that the individual executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public
My commission expires: 6/2/2013

LAURA D. FISCHER
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-02-13

LIMITED POWER OF ATTORNEY TO CARRINGTON MORTGAGE SERVICES, LLC

3

2013080170         OK **23725** Pg **791**

Georgia Intangible Tax Paid $162.75

Filed and Recorded:
4/25/2013 2:43:52 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording Requested by
Bank of America, N.A.
WHEN RECORDED MAIL TO:

*Dan Wright 1001 Liberty Ave Ste 675*
*Pittsburgh PA 15222*

*new money: $ 34,719.99*

Bank of America, N.A.
1001 Liberty Avenue, Suite 675
Pittsburgh, PA 15222

*Prev Rec Info: 11/05/2007 BK: 20420 PG: 598*

This document was prepared by Bank of America, N.A.

See Exhibit B for assignments of record if applicable

Space Above for Recorder's Use

### LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on September 5, 2012 between KENNETH COOK (the "Borrower(s)") and Bank of America, N.A., Original Lender/Beneficiary Lender or Servicer ("Lender"), amends and supplements that certain (Mortgage/Deed of Trust) (the "Security Instrument") dated the 13th of November, 2007 which covers the real and personal property described in the Security Instrument and defined therein as the 'Property' (See Exhibit A for Legal Description if applicable), located at 5771 SOUTHLAND WALK, STONE MOUNTAIN, GA 30087.

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its[their] entirety as follows:

Borrower owes Lender the principal sum of one hundred ninety-nine thousand six hundred five and 99/100, (U.S. Dollars) ($199,605.99). This debt is evidenced Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2042. The Borrower[s] shall comply with all other covenants, agreements and requirements of the Security Instrument. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument shall remain unchanged, and the Borrower[s] and Bank of America, N.A. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and

WDGGovLnModAgree                Page 1 of 4

the Security Instrument shall remain in full force and effect and shall continue to be a first lien on the above-described property. All capitalized terms not defined herein shall have the same meanings as set forth in the Security Instrument.

SIGNED AND ACCEPTED THIS ___4th___ DAY OF ___October 2012___
BY

_Stacy Scott_ 10-4-12          _Sharon Fering-Walker_ 10-04-2012
Witness Signature      Date      Witness Signature      Date

_Stacy Scott_                    _Sharon Fering-walker_
Witness Printed Name             Witness Printed Name

_10-4-12_                        _10-04-2012_
Witness Date                     Witness Date

_Kenneth Cook_
KENNETH COOK

_____          _____

_____          _____


(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of _Georgia_, County of _Rockdale_  On this _4th_ day of _October 2012_ before me the undersigned, a Notary Public in and for said State, personally appeared KENNETH COOK known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged that _____he_____ executed the same.

Witness my hand and official seal.

_Romona Spencer Anderson_ Notary Signature

_Romona Spencer Anderson_ Notary Public Printed Name Place Seal Here

_12/12/2015_ Notary Public Commission Expiration Date

DEED BOOK 23725 Pg 793

**DO NOT WRITE BELOW THIS LINE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
    By: Urban Settlement Services, LLC, its attorney in fact

By: _____    Dated: ___JAN 1 5 2013___

Name:   **Andre Bandelier**

Title :   **ASSISTANT SECRETARY**

_____[Space below this line for Acknowledgement]_____

STATE OF ___Colorado___
COUNTY OF ___Broomfield___

On __1/15/2013__ before me, __Philip Her_____Notary Public, personally

appeared _____Andre Bandelier_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

_____ Notary Public Printed Name Place Seal Here

___12/27/2015___ Notary Public Commission Expiration Date

```
┌────────────────────────────────────────┐
│            PHILLIP HER                  │
│  NOTARY PUBLIC, STATE OF COLORADO       │
└────────────────────────────────────────┘
```

My Comm. Expires December 27, 2015

WDGGovLnModAgree          Page 4 of 4

FEB BOOK  23725 Pg  794
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Exhibit "A"

Legal Description

All that tract or parcel of land lying and being in Land Lot 65 of the 16th District, DeKalb County, Georgia, being Lot 26 of Southland Subdivision, Unit II, as per plat thereof recorded in Plat Book 84, page 140, DeKalb County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

2014077083    DEED BOOK **24389** Pg **742**

Filed and Recorded:

**5/22/2014 3:33:02 PM**

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Georgia Intangible Tax Paid $562.50

Investor Loan #

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
11802 Ridge Parkway, Suite 100
Broomfield, CO  80021
Prepared by:

**Recording Requested By:**

Bank of America, N.A.
*11802 RIDGE PARKWAY. STE 100 BROOMFIELD. CO 80021*
Document No.: 06521742869537105A
*APN:*

ORIG.MTG $ *164,886.00*

NEW MTG $ *187,389.46*

NEW MONEY $ *22,503.46*

Unpaid Principal Bal. $ *197,242.99*

Space Above for Recorder's Use

*PREV REC INFO: 11/05/2007  BK: 20420  PG: 598.  INS 2007-627380*

# LOAN MODIFICATION AGREEMENT
## (FHA Insured) (FHA-HAMP with Partial Claim)

**Borrower ("I"):** KENNETH COOK

**Lender or Servicer ("Lender"):** Bank of America, N.A.

**Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):** October 24, 2007

**FHA Loan Number:**

**Property Address ("Property"): 5771 Southland Walk, Stone Mountain, GA 30087**
*ORIG LENDER: PINESTATE MORTGAGE CORPORATION*

*MODIFICATION DATE: 05/06/2014*

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 01/16/14)    Page 1

DEED BOOK 24389 Pg 743

See attached Exhibit "A" for Legal Description

**Recording information:** Mortgage dated _____, in principal sum of _____, and recorded in _____ (County and State or Other Jurisdiction) on _____, in Liber/Book _____, Page(s)_____, Instrument Number _____.

**Important Disclosures:** The Federal Housing Administration (FHA) requires that Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage and partial claim to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are still true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." If there is more than one borrower or mortgagor executing this document, each is referred to as "I," "my," includes "our," and the singular includes the plural and vice versa. Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

1. **My Representations.** I certify, represent to Lender, and agree:

   A. I am experiencing a financial hardship caused by a verifiable loss of income or increase in living expenses. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

   B. I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

   C. I am not a borrower on any other FHA-insured mortgage.

   D. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

Loan Modification Agreement (FHA-HAMP Modification with Partial Claim)
Bank of America, N.A. (rev. 01/16/14)                    One- to Four-Family

**E.** Under penalty of perjury, I provided Lender with full and complete information that, when provided, accurately stated my income, expenses, and assets. To the extent requested by Lender, I provided documents that supported that information. However, I was not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program") or for another loss mitigation option.

**F.** I have made the trial period plan payments required under the Program.

**G.** I currently have sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.

**2. Acknowledgements and Preconditions to Modification.** I understand, acknowledge, and agree:

**A.** As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

**B.** Lender has no obligation to make any modification of the Loan Documents if I any of the requirements under this Agreement has not been met.

**C.** Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

**D.** The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

**3. The Modification.** I understand, acknowledge, and agree:

**A.** If all of my representations in Section 1 above continue to be true and correct and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on April 1, 2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

**B.** The new Maturity Date will be: March 1, 2044.

**Loan Modification Agreement** (FHA-HAMP Modification with Partial Claim)     One- to Four-Family
Bank of America, N.A. (rev. 01/16/14)                                                          Page 3

DEED BOOK 24389 Pg 745

   **C.** The new principal balance of my Note will be $187,389.46 (the "New Principal Balance"). In servicing your loan, the Bank may have incurred third-party fees or charges that were not invoiced before we calculated the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

   **D.** I promise to pay the New Principal Balance, plus interest, to the order of Lender.

   **E.** The annual interest rate on the New Principal Balance will be 4.125%, beginning April 1, 2014, both before and after any new default. This fixed interest rate will remain in effect until the principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

   **F.** On April 1, 2014 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,190.46 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $908.18, plus the current required escrow payment of $282.28. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

   **G.** I will be in default if I do not comply with the terms of the Modified Loan Documents.

**4.** **Additional Agreements.** I understand and agree:

   **A.** I accept the risks of entering into this Agreement. These risks include (but are not limited to):

     (1) The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

     (2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

**Loan Modification Agreement** (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 01/16/14)    Page 4

**B.** I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

**C.** All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

**D.** This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

**E.** All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

**F.** The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

**G.** I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

**H.**  I know that I am only entitled to loss mitigation terms that comply with the Program.  Therefore, if Lender discovers any error in the terms of this Agreement or in the FHA's required subordinate mortgage loan, I authorize the Lender to advise me of the error.  If I do not accept the corrected terms, at Lender's option, this Agreement becomes void and of no legal effect.  If I accept the corrected terms, I will execute and promptly return to Lender the revised and additional documents that will (1) consummate the intended terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement").  If I do not sign and deliver a Corrected Agreement or any additional document required by Lender to comply with the Program, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I may not be eligible for the Program.

**I.**  Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information").  In addition, I consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counseling agency.

**J.**  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents").  I will deliver the Replacement Documents to Lender within ten days after I receive Lender's written request for such Replacement Documents.

---

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

_Kenneth Cook_

Kenneth Cook
(Must Be Signed Exactly As Printed)

_5 / 6 / 2014_
Date

_Lahn Daniff Hano_
Witness Signature

_Latris Daniff Haro_
Witness Printed Name

_05 / 06 / 14_
Witness Date

_____[Space below this line for Acknowledgement]_____

STATE OF _Georgia_

COUNTY OF _Dekalb_

On the _6th_ day of _May_ in the year _2014_ before me, _Kiera D Leonard_
Notary Public, personally appeared <u>Kenneth Cook</u>, personally known to me or proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument, the person(s), or entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_____Notary Signature

_Kiera D Leonard_  ____Notary Public Printed Name Please Seal Here

_Sept 17, 2017_  ____Notary Public Commission Expiration Date

**KIARA D LEONARD**
**NOTARY PUBLIC**
**Dekalb County**
**State of Georgia**
**My Comm. Expires Sept. 17, 2017**

**Loan Modification Agreement** (FHA-HAMP Modification with Partial Claim)    One- to Four-Family
Bank of America, N.A. (rev. 01/16/14)                                       Page 7

**DO NOT WRITE BELOW THIS LINE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated: **MAY 0 8 2014**

Name: CRYSTAL MUAS
Title: ASSISTANT SECRETARY

_____[Space below this line for Acknowledgement]_____

STATE OF COLORADO
COUNTY OF BROOMFIELD

On 5-8-14 before Me, SHERRY LYNN BROWN Notary Public, personally appeared
CRYSTAL MUAS Assistant Secretary of Urban Settlement
Services, LLC., attorney in fact for Bank of America, N.A., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ Notary Signature

SHERRY LYNN BROWN _____ Notary Public Printed Name Please Seal Here

DECEMBER 27, 2015 _____ Notary Public Commission Expiration Date

SHERRY LYNN BROWN
NOTARY PUBLIC
STATE OF COLORADO
My Comm. Expires December 27, 2015

DEED BOOK 24389 Pg 750
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Exhibit A

Legal Description

All that tract or parcel of land lying and being in Land Lot 65 of the 16th District, DeKalb County, Georgia, being Lot 26 of Southland Subdivision, Unit II, as per plat thereof recorded in Plat Book 84, page 140, DeKalb County, Georgia Records, which recorded plat is incorporated herein by reference and made a part of this description.

EXHIBIT "B"

# NOTE

FHA CASE NO.
▮▮▮▮▮▮▮▮▮▮

October 24, 2007
[Date]

**5771 Southland Walk**
**Stone Mountain, GA  30087**

[Property Address]

**1.   PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **PINE STATE MORTGAGE CORPORATION, A Georgia Corporation**

and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Sixty Four Thousand Eight Hundred Eighty Six and no/100** Dollars (U.S. $ **164,886.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and Five Eighths**

percent ( **6.6250%** ) per year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**

   **(A)   Time**

   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **December 01, 2007** . Any principal and interest remaining on the first day of **November 2037** will be due on that date, which is called the "Maturity Date."

   **(B)   Place**

   Payment shall be made at **PINE STATE MORTGAGE CORPORATION, 6065 Roswell Road, Suite 300, Atlanta, GA  30328**

or at such other place as Lender may designate in writing by notice to Borrower.

   **(C)   Amount**

   Each monthly payment of principal and interest will be in the amount of U.S. $**1,055.78**
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

MULTISTATE FHA FIXED RATE NOTE                                                                 6/96

ITEM 6432L1 (9606)                      *(Page 1 of 3 pages)*                GreatDocs ™
                                                                         To Order Call: 1-800-968-5775

*KMC*

**(D)  Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge          ☐ Graduated Payment Allonge

☐ Other [specify]

**5.    BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.    BORROWER'S FAILURE TO PAY**

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four**                                                        percent (          **4.0000**%) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.    WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

MULTISTATE FHA FIXED RATE NOTE

ITEM 5432L2 (9606)                    *(Page 2 of 3 pages)*                    GreatDocs ™
To Order Call: 1-800-968-5775

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Kenneth Cook_ _____ (Seal)          _____ (Seal)
Kenneth Cook                                -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

[Sign Original Only]

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS SERVICING LP
BY: _Michele Sjolander_
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

COUNTRYWIDE HOME LOANS SERVICING LP

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

Pay to the order of
Countrywide Bank, FSB without recourse
Pine State Mortgage Corporation

_Michele R. Moore_
Michele R. Moore, Asst. Vice President

**MULTISTATE FHA FIXED RATE NOTE**

ITEM 6432L3 (9606)                    (Page 3 of 3 pages)                    GreatDocs™
                                                                            To Order Call: 1-800-968-5775

# AMENDED AND RESTATED NOTE | FHA Case No.

**Multistate**

October 24, 2007

**5771 SOUTHLAND WALK**
**STONE MOUNTAIN, GA  30087**

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Seventy Eight Thousand Two Hundred Twenty Two Dollars and Fifty Eight Cents (Dollars U.S. $178,222.58) plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Five percent (5%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on July 01, 2009.  Any principal and interest remaining on the first day of November 01, 2038, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall  be made at
155 North Lake Avenue  Pasadena, California  91109
or at such place a Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $  964.96.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box]

[ ] Graduated Payment Allonge    [ ] Growing Equity Allonge    [ ] Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

Page 1 of 2

FHA Multistate Fixed Rate Note - 10/95
Initials: _KHC_

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4% ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this options without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_KENNETH COOK_ (signature)

KENNETH COOK

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
BAC HOME LOANS SERVICING, LP

BY _Michele Sjolander_
MICHELE SJOLANDER
SVP, OPERATIONS AND LOAN DELIVERY

Page 2 of 2

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY RECONTRUST COMPANY, N.A.
AS ATTORNEY-IN-FACT

BY: _Hong Dang_
HONG DANG
ASSISTANT VICE PRESIDENT

# Bank of America

## Home Loans

Bank of America, N.A.
11802 Ridge Parkway, Suite 100-HRM
HOME RETENTION
Broomfield, CO 80021

Notice Date: September 5, 2012

KENNETH COOK
5771 SOUTHLAND WALK
STONE MOUNTAIN, GA 30087

Account No █████████

FHA Case No █████████

Property Address:
5771 SOUTHLAND WALK
STONE MOUNTAIN, GA 30087

### AMENDED AND RESTATED NOTE
### State of Georgia

Origination Date: 13th of November, 2007

1. **PARTIES**
   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Bank of America, N.A. and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY INTEREST**
   In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred ninety-nine thousand six hundred five and 99/100 (Dollars U.S.) $199,605.99 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of four and 13/100, (4.125%) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   **(A) Time**
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on October 1, 2012. Any principal and interest remaining on September 1, 2042 will be due on that date, which is called the "Maturity Date."

   **(B) Place**
   Payment shall be made to Payment Processing PO Box 650070 Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

   **(C) Amount**
   Each monthly payment of principal and interest will be in the amount of U.S $967.39. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

   **(D) Allonge to this Note for payment adjustments**
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

   ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

5.   **BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

6.   **BORROWER'S FAILURE TO PAY**

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

7.   **WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

**10. GROUNDS FOR ACCELERATION OF DEBT**

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

_Kenneth Cook_ Dated _10-4-12_

KENNETH COOK

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY: *Ann M Flores*
ANN M FLORES
ASSISTANT VICE PRESIDENT